Note.—See under (1) 4 C. J. p. 1101, §3079. (2) 4 C. J. p. 606, §2435; 2 R. C. L. p. 168; 4 R. C. L. Supp. p. 87.

## MYERS v. GARLAND et al.

No. 18408. Opinion Filed Nov. 22, 1927.

Rehearing Denied Jan. 10, 1928.

(Syllabus.)

1. Fraud—Essentials of Actionable Fraud.

"To constitute actionable fraud, it must be made to appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; (6) that he thereby suffered injury; and (7) all of these facts must be proven with a reasonable degree of certainty, and all of them must be found to exist; the absence of any of them would, be fatal to the recovery." (Wingate v. Render, 58 Okla. 656, 160 Pac. 614.)

2. Same—Oil and Gas—Mining Partnership —Good Faith Between Partners—Settlement of Partnership Affairs Held Free from Fraud and Adverse Pressure.

The facts in this case made it the duty of the plaintiff and the defendant to exercise the highest degree of good faith and to refrain from taking any advantage of the other by the slightest misrepresentation, concealment, threat, or adverse pressure of any kind. Held, from the evidence, it is clear that the defendant, by reason of his fiduciary relation, took no advantage of the plaintiff and that the transaction was free from fraud and adverse pressure.

3. Same—Judgment for Defendant Sustained.

Record examined, and held, sufficient to support the judgment of the trial court.

Error from District Court, Tulsa County; R. D. Hudson, Judge.

Action by F. F. Myers against R. F. Garland et al. Judgment for defendants and plaintiff brings error. Affirmed.

See, also 122 Okla. 71, 251 Pac. 34; 122 Okla. 157, 252 Pac. 1090.

Twyford & Smith and Ames, Lowe & Cochran, for plaintiff in error.

James A. Veazey and Walter Davidson, for defendant in error Carter Oil Company.

T. J. Flannelly and Paul B. Mason, for defendant in error Prairie Oil & Gas Company.

Disney, Wheeler & Alcorn, for defendant in error R. F. Garland.

Edwin H. Chandler, for defendant in error Sinclair Crude Oil Purchasing Company.

James B. Diggs and C. L. Billings, for defendant in error Gulf Pipe Line Company.

HEFNER, J. F. F. Myers, as plaintiff, sued R. F. Garland, as defendant, in the district court of Tulsa county. The parties will be referred to in this court as they appeared in the trial court.

The plaintiff's cause of action was for the declaration, settlement, accounting, and dissolution of an alleged partnership relation existing between himself and the defendant, and for the setting aside of a settlement of the alleged partnership affairs entered into on the 21st day of April, 1926. The relief prayed for was based on the grounds of misrepresentation, concealment, adverse pressure, and threats, as contemplated by section 8112, C. O. S. 1921, the same being charged to be part of a general plan and intention on the part of the defendant to cheat and defraud the plaintiff of his interest in the partnership property and to gain a material advantage over the plaintiff in the division of the partnership assets for his own individual use.

The plaintiff, at the time the alleged partnership was formed, owned a block of acreage in Harper county, Kan., of approximately 9,000 acres, which was turned into the alleged partnership and upon which a test well was then being drilled, and thereafter plaintiff and defendant acquired oil and gas leases upon other lands, including the S. ½ of N. E. ¼ of section 26, 9 north, 6 east, in Seminole county, Okla., upon which they were required to drill a well. They made a drilling contract with the Independent Oil & Gas Company by which they agreed to convey to the company an undivided one-half interest in the lease and, in addition thereto, two 40-acre tracts as a consideration for the drilling of said well. The well was spudded in on or about the 19th day of April, 1926.

Negotiations for the division of the property held jointly by plaintiff and defendant were begun about the 18th day of April, 1926. Under this settlement the parties divided the acreage owned jointly by them. The court, in one of its findings of fact, discloses how the settlement was made and how the property was divided. The finding is as follows:

"That within a day or two before the 21st of April, 1926, the parties entered into negotiations looking to the closing out of the affairs in which they were jointly interested, and to the plaintiff's leaving the offices over which the defendant heretofore had control;

that various negotiations were had each party making the other various proposals, and which negotiations culminated in the plaintiff's taking about 1,500 acres of acreage around the Harper county well, keeping an eighth interest in the said well, taking one-third of the Reno county acreage, assigning to the defendant his one-quarter interest in the Seminole county discovery well, and keeping a half interest in 80 acres immediately west of the discovery well and assigning to the defendant $1,500 of the White Eagle Oil & Refining Company's purchase order, in payment of the commissions then owing to the defendant."

After the settlement the plaintiff continued to drill the well in Harper county, Kan., to a depth of approximately 4,000 feet, and the test was dry. Operations on the well in Seminole county were continued and it was drilled to a depth of approximately 4,000 feet, and on the 16th day of July, 1926, oil in paying quantities was discovered. The well produced as high as 7,000 or 8,000 barrels per day. This was the real discovery well in the now famous Seminole pool. At the time the settlement was had between the parties, the Seminole well was about 1,000 feet deep and was spudded in two or three days before the settlement was consummated. Negotiations for the settlement were begun before the well was spudded in, or at least not later than the day on which it was spudded in. On August 12, 1926, 26 days after the well was brought in, this suit was filed seeking to set aside the settlement made between the parties on April 21, 1926.

The case was tried to the district court of Tulsa county, and, after the evidence was introduced and argument had, the trial court found all issues in favor of defendant and against the plaintiff and entered its judgment accordingly. From this judgment, the plaintiff has appealed to this court.

This is purely an equitable case and this court will consider the whole record and weigh the evidence.

For reversal, the plaintiff relies upon five propositions. Taking the view of the case we do, it will not be necessary for us to notice all of them.

It is first urged that the relationship between plaintiff and defendant was that of ordinary partners. As to this proposition, the court concluded, as a matter of law, that the Seminole county and Harper county properties constituted a mining partnership. For the sake of brevity, we do not set out the evidence on which the court based its judgment, but on an examination of the

same, we think the court was justified in reaching this conclusion.

For his second proposition, the plaintiff urges that the settlement between the parties should be set aside because of misrepresentation, concealment, threats, and adverse pressure exerted by the defendant in procuring the same. This proposition raises two questions, the one of fraud and the other of adverse pressure which is not based on fraud. These, as we understand it, are the two principal propositions relied upon by plaintiff for reversal. We will consider them separately.

Plaintiff alleged that during the negotiations for the settlement, the defendant represented to him that the well drilling in Seminole county was running 200 feet geologically low and that it was running lower than the I. T. I. O. well in section 24, township 9, range 6, and that the same was running substantially the same as a dry hole south of the discovery well; and that the said well was proceeding in an unsatisfactory condition. With reference to this allegation of fraud, the court made the following finding:

"That during the said negotiations the defendant did not represent or state to the plaintiff that the said discovery well was drilling or running 200 feet, or any other depth, geologically low, or that the same was running lower than the I. T. I. O. well in section 24, township 9, range 6, or that the formations therein were running substantially the same as a dry hole south of the discovery well; that he did not state that the said well was proceeding in an unsatisfactory condition."

One of the leading cases in this state defining what is requisite to prove actionable fraud is Wingate v. Render, 58 Okla. 656, 160 Pac. 614, in which are laid down the six elements of fraud necessary to be proven. In this case, Mr. Chief Justice Kane, speaking for the court, said:

"To constitute actionable fraud, it must be made to appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by the plaintiff; (5) that plaintiff acted in reliance upon it; (6) that he thereby suffered injury, and (7) all these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any of them would be fatal to the recovery."

Three of these essential elements are:

First, a material representation must be made; second, the statement made must be false; and, third, the plaintiff must have acted upon the representation. It is urged that neither of these elements is present in the instant case. The defendant testified positively that he did not make such statements. The evidence discloses that the Seminole well was spudded in about the same day that negotiations for the settlement were begun. Negotiations were carried on for about three days and at the time the same were consummated the well was about 1,000 feet deep. The territory at that time was wildcat territory. No production was found until the well had been drilled more than 4,000 feet deep; more than 3,000 feet of which depth was drilled after the settlement. The defendant had not been on the ground where the well was being drilled after it was spudded in and had no information as to whether or not it was running geologically high or low. No comparison had been made between the wells and, according to the evidence of geologists, no comparison could be made at that time and, in fact, no comparison had been made between the Garland well, the I. T. I. O. well, and the Turman dry hole. The Garland well at the time of the settlement was not deep enough to make a comparison. No showing of oil or gas had been discovered in the well. There was no more reason to believe it would be a paying well than the well the plaintiff was drilling in Kansas. At the time the settlement was made it would have been guesswork as to what either well would or might do. As a protection in the Seminole district, the plaintiff retained a one-half interest in an 80-acre lease near the drilling well. The trial court heard and saw all the witnesses and all of the facts were before it. Under the facts proven, we do not think the findings of the trial court were against the weight of the evidence on this issue.

In the subsequent drilling of the well the evidence shows, by actual measurement, that the well was running 58 feet geologically low at a depth of 2,400 feet. One of the geologists testified that if it was running low at that depth it was probably running low at the depth of 1,000 feet. We think little was or could have been known as to whether or not the well was running low at 1,000 feet, the time the settlement was made, but in all probability, according to later drilling reports, the well was, as a matter of fact, running low at the depth

of 1,000 feet, and if such a statement was made, it was probably true. (See case-made 678.)

On this issue the trial court not only found that the defendant did not make the statement that the well was running low, as claimed by the plaintiff and alleged as fraud, but further found that if such statement was made, it was true and not a false statement of an existing fact. While the evidence on this phase of the case is not very satisfactory nor very certain, we think, however, the court was justified in making this finding in the light of subsequent drilling.

If the statement was true, it was not actionable fraud. A representation is not actionable unless actually false. Before plaintiff could have recovered it was necessary for him to have proven that the statement was not only made, but that it was actually false.

The defendant contends that even if the statements were made, the plaintiff did not rely upon them. Upon this issue the trial court found:

"The court further finds that the plaintiff did not rely upon any statements, as alleged in the petition, made or alleged to have been made, by the defendant, but acted upon his own judgment and in reliance thereon, and not in reliance upon any statement or act of the defendant. In this connection, the court finds that the parties, hereto are men of substantially the same experience, age and mental qualification, and that their experience in the oil business is substantially the same."

The plaintiff, himself. testified as follows:

"Q. Didn't you pay any attention to the remark (as to the depth) at the time? A. I did not take the remark seriously; no, sir. Q. After McGee left, did you talk it over with Bob? A. Well, when I took that proposition seriously was about two or three days, possibly, one or two or three days, before this suit was filed."

Later in the day the plaintiff was recalled to the witness stand and testified as follows:

"Q. You testified this morning that a part of the statements which Mr. Garland made to you on April the 19th and 20th leading up to the assignment you took seriously and a part of them you did not. I will ask you to tell the court what part of those statements made by Garland on that day or on those two days you did take seriously, and what part of them you did not.

"The Witness: I took the part of it seriously when he told me that he was going to file the affidavits in Harper county, Kan..

which would cloud the title. I took the part of it seriously when he told me that the well was running low."

The plaintiff also testified that he supposed it was a dry hole proposition, any way. The evidence discloses that the settlement was made on April 21st. The well came in as a good producer on July 16th. The suit was filed on August 21st. The trial court saw the plaintiff on the stand, heard him testify, and after hearing all the evidence found that he did not rely on the statements, if they were made. The trial court evidently took as true the statement of plaintiff that he did not take the remark of defendant as to depth of the well seriously at the time it was made and did not so take it until two or three days before the suit was filed. This was long after settlement was had and after the well was producing.

In the instant case, before the plaintiff could have actionable fraud it was necessary for him to have relied upon the misrepresentation for which he seeks redress **at the time the settlement was made.** The trial court has found that he did not so rely at the time the settlement was made, and in this we do not think the finding is against the weight of the evidence.

The plaintiff and the defendant owned jointly the leases in Harper county, Kan. They stood in the name of the plaintiff. The plaintiff alleges that the settlement between him and the defendant should be set aside because of threats and adverse pressure exerted by the defendant in procuring such settlement. This question does not involve the question of fraud, but that of adverse pressure as contemplated in section 8112, C. O. S. 1921. The adverse pressure complained of is that the defendant threatened to cloud the title to this block of leases by placing an affidavit on record in Harper county, Kan., showing his interest in the leases, unless the plaintiff executed and delivered to him an assignment of such interest.

On this issue the court found that the defendant did not state that unless the plaintiff made the assignment he would file an affidavit in Harper county, Kan., to cloud the title of the leases in the said block.

The plaintiff admitted that if the affidavit was placed on record it would speak the truth, but he contended that if it became necessary for him to sell more of the leases for the purpose of completing the well, he could not make title to the same without the defendant joining therein with him, and,

for this reason, he was not entitled to have an assignment at that time. On this issue of the case the court found as follows:

"The court further finds that the plaintiff admitted on the stand that at the time of the said settlement the defendant was entitled to his interest in the Harper county well and acreage, according to their prior agreement, and if he had placed an affidavit of record, it would have spoken the truth. The court further finds that at the time sufficient acreage had been sold in the opinion of the parties, to drill the said well, and a division had been had between the plaintiff and Hal Moore and the Berry Petroleum Company, and that the plaintiff either had in his possession or control of sufficient purchase orders to meet what was stated to be, the financial requirements of the drilling of said well."

As to whether or not the defendant made the statements claimed by plaintiff was largely a question between the plaintiff and defendant. Plaintiff testified that the defendant did make such statements; the defendant testified that he did not make such statements. The court found that the statements were not made. We do not think this finding is against the weight of the evidence.

The facts in this case made it the duty of the plaintiff and the defendant to exercise the highest degree of good faith and to refrain from taking any advantage of the other by the slightest misrepresentation, concealment, threat, or adverse pressure of any kind. If there was any misrepresentation, concealment, threat, or adverse pressure in connection with the settlement had between the plaintiff and the defendant, then the settlement should be set aside and vacated.

The trial court found that a full and complete settlement had been had between the parties and that the defendant made full disclosures on all the items in which the parties were mutually interested and that no fraud or concealment or adverse pressure was perpetrated by him on the plaintiff. We do not think the weight of the evidence is against this finding of the trial court, but, on the contrary, we think, by a clear preponderance of the evidence, it is shown that the defendant took no advantage of the plaintiff by reason of his fiduciary relation, and that the transaction was free from fraud and adverse pressure.

Under the record, the judgment of the trial court is the one that should have been entered. It is accordingly affirmed.

BRANSON, C. J., MASON, V. C. J., and HARRISON, PHELPS, LESTER, and RILEY, JJ., concur.

Note.—See under (1) 26 C. J. pp. 1062, 1065, §6; 27 C. J. p. 62, §199; 12 R. C. L. p. 240; 2 R. C. L. Supp. p. 1407; 4 R. C. L. Supp. p. 752; 5 R. C. L. Supp. p. 638; 6 R. C. L. Supp. p. 701. (2) 40 C. J. p. 1152, §808; 30 Cyc. p. 706. (3) 4 C. J. p. 1129, §3122.